IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MUNICIPAL SERVICES OF AMERICA CORP., | ) ) ) | Case No. 1:22-cv-2037 |
| Plaintiff, | ) ) | MAGISTRATE JUDGE THOMAS M. PARKER |
| v. | ) ) | |
| RAY SAK, CITY OF WICKLIFFE | ) ) ) | **MEMORANDUM OPINION AND ORDER**[1] |
| Defendants. | | |

Defendant City of Wickliffe ("Wickliffe"), has moved for partial judgment on the pleadings as to Counts One, Three, and Four of plaintiff Municipal Services of America Corp.'s ("MSA") complaint pursuant to Fed. R. Civ. P. 12(c). After construing the allegations in the complaint in a light most favorable to MSA, the court will GRANT Wickliffe's motion for judgment on the pleadings on each of those three counts.

**I.     Procedural Background**

On November 11, 2022, MSA filed a complaint against Wickliffe and Ray Sack,[2] an employee of Wickliffe and Commissioner of the Building Department. ECF Doc. 1. The complaint asserted four claims for damages: (i) a violation of due process (Count One); (ii) tortious interference with business relationships (Count Two); (iii) an antitrust violation

---

[1] The parties consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636, *et seq.* ECF Doc. 6.
[2] The complaint misspells the individual defendant's last name as Sak instead of Sack, as explained in the defendant's answer to the complaint. ECF Doc. 8 at 1.

under Section 1 of the Sherman Act, 15 U.S.C. § 1 (Count Three); and (iv) First Amendment retaliation under 42 U.S.C. § 1983 (Count Four). *Id.* at 7-14, 16. The complaint also asserted a declaratory judgment claim (Count Five), for which MSA sought relief in the form of: (i) a declaratory judgment that Wickliffe City Ordinances 1303.70 and 1161.05 are unconstitutional; and (ii) an injunction preventing the enforcement of these ordinances. *Id.* at 14-17. Wickliffe filed a motion to dismiss Count Two pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Wickliffe was immune from intentional tort claims. ECF Doc. 3. On May 1, 2023, the court granted the motion for partial dismissal and dismissed Count Two with prejudice. ECF Doc. 9. Wickliffe has now moved for partial judgment on the pleadings as to Counts One, Three, and Four. ECF Doc. 11.

## II. Facts[3]

MSA's complaint alleges the following relevant facts.[4] Wickliffe requires prospective contractors to register with the city, which entails providing proof of insurance, providing a bond, and paying an annual fee. ECF Doc. 1 at 1. For the four years prior to the filing of its complaint, MSA was a registered contractor in Wickliffe. *Id.* at 2.

Under Wickliffe City Ordinance 1303.70, a "Certificate of Occupancy" must be issued before title to a house can be transferred. *Id.* A Certificate of Occupancy requires a building to undergo various inspections, including the inspection of sidewalks, driveways, and the building's connection to the city's sewer system. *Id.* For one of these inspections, a homeowner must pass a "Sewer Dye Test," which requires the homeowner to hire a contractor to locate and expose the

---

[3] Because Wickliffe has not sought judgment on the pleadings as to Count Five, *see* ECF Doc. 11, and Count Two was previously dismissed, *see* ECF Doc. 9, this section will omit facts and pleadings which are only relevant to those claims.

[4] The facts in this section are drawn from MSA's complaint, which the court is obligated to accept as true, as we view the allegations in a light most favorable to MSA, the non-moving party. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

2

"Test Tee" portion of the building's sewer system. *Id.* at 3. The average cost for this test is $500 but if the building fails the test, then a homeowner is required to replace one or more sewer lines, which could cost between $5,000 and $15,000. *Id.*

Wickliffe keeps a list of contractors which is provided to consumers to help them select contractors who can perform the various inspections and repair work discussed above. *Id.* For several years, when consumers would reach out to Wickliffe for information regarding contractors who could perform the Test Tee inspection or associated sewer repairs, Wickliffe, by and through Sack and other city employees, would: (i) not inform potential customers that a list of registered contractors was available; and (ii) only provide the contact information for Formica Plumbing to the exclusion of all other contractors. *Id.* at 3-4. On at least two occasions, Sack has been recorded recommending Formica Plumbing as the only company to contact for the relevant sewer inspections. *Id.* at 4.

For required sidewalk and driveway inspections, Sack and other representatives of Wickliffe would recommend Vanjo Construction as the only contractor for concrete repair work – with Vanjo Construction receiving more than 90% of the concrete work in Wickliffe and Wickliffe representatives calling it the "City's contractor for concrete work." *Id.* at 4-5. In 2018, Wickliffe issued a letter advising its employees "against the practice of referring residents to specific contractors and/or endorsing specific contractors." *Id.* at 7. In 2019, Wickliffe suspended Sack for making referrals to specific contractors. *Id.* at 6.

Even though MSA requested to be listed as a "Sewer" contractor on its yearly registration, MSA has had that designation removed on at least three occasions despite repeated complaints by MSA's owner. *Id.* at 2. In September 2019, MSA brought the issue of its removal from the "Sewer" contractor's list and the inappropriate referrals to Formica Plumbing to

3

Wickliffe's attention. *Id.* at 5, 13. In October 2019, MSA was asked to remove a sign in the front yard of a client's residence because it allegedly violated Wickliffe City Ordinance 1161.05 (Wickliffe's ordinance governing temporary signs), even though MSA's sign complied with the regulation and other signs on the street were not removed. *Id.* at 5-6.

### III. Judgment on the Pleadings Standard

Once the pleadings stage is finished, a party may seek judgment on the pleadings. Fed. R. Civ. P. 12(c); *Moderwell v. Cuyahoga Cnty*, 997 F.3d 653, 659 (6th Cir. 2021). "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). "The only difference between Rule 12(c) and Rule 12(b)(6)" is timing. *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003).

To succeed, the moving party has to show that: (1) the allegations in the opposing party's pleadings, even when accepted as true, don't establish a material issue of fact; and (2) the moving party is entitled to judgment as a matter of law. *Moderwell*, 997 F.3d at 659. At this stage, a material issue of fact exists when the complaint alleges more than a speculative possibility that the opposing party is entitled to the relief he seeks. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Alleged facts must "raise a right to relief above the speculative level."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Showing a *plausible* right to relief doesn't require the plaintiff to show that he'll *probably* win.). At the very least, the complaint should indicate the "'circumstances, occurrences, and events' giving rise to [his] claim[s]." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (citing *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995), and Fed. R. Civ. P. 8). Conclusory allegations aren't enough. *Id.* In reviewing a motion

to dismiss, courts distinguish between "well-[pleaded] factual allegations," which it must treat as true, and "naked assertions," which it need not. *Iqbal*, 556 U.S. at 668. Courts will not accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

This standard doesn't require the opposing party to clear a high hurdle. It effectively serves a gatekeeping function for the discovery phase.[5] *See Twombly*, 550 U.S. at 556 (explaining that the standard is satisfied when there's a "reasonable expectation that discovery will reveal evidence" supporting the allegations.). If the opposing party alleged enough facts, then the case will proceed to discovery even when a "savvy judge" might think there's only a remote chance that actual proof will be found to support the allegations. *Id.*

IV.     Law & Analysis

    A.     **Count Four – First Amendment Retaliation**

Wickliffe' motion argues that it is entitled to judgment as a matter of law on Count Four because MSA failed to state a viable *Monell*[6] claim. It argues that for MSA to sustain its claim against Wickliffe, MSA was required to show that Wickliffe itself (and not merely its employees) violated MSA's First Amendment rights by alleging facts that demonstrate MSA's rights were violated because of a municipal policy, custom, or practice; however, the complaint does not allege any such facts. ECF Doc. 11 at 23-25.[7]

---

[5] Here, a motion for judgment on the pleadings differs from a motion to dismiss for failure to state a claim, which effectively serves as a gatekeeper for the answer phase. *Cf.* Fed. R. Civ. P. 12(b)(6) (providing that a motion to dismiss for failure to state a claim must be filed *before* an answer). Otherwise, the standards are practically the same. *See Jackson v. Prof'l Radiology, Inc.*, 864 F.3d 463, 465-66 (6th Cir. 2017).
[6] *Monell v. Dep't of Soc. Servs*, 436 U.S. 658 (1978).
[7] Citations to the parties' briefs and motions will refer to the overall page number of the filings.

MSA's opposition to Wickliffe's motion to dismiss concedes to all of Wickliffe's arguments relating to Count Four. ECF Doc. 16 at 27. Wickliffe then specifically requests that the motion to dismiss be denied only as to Counts One and Three. *Id.* Wickliffe's motion to dismiss MSA's First Amendment retaliation claim (Count Four) will, therefore, be GRANTED.

**B.  Count One – Violation of Due Process**

MSA's complaint labeled its Count One claim as simply a "Violation of Due Process" and the Count One allegations did not specify whether MSA intended to assert both substantive and procedural due process claims. ECF Doc. 1 at 7-9. MSA seemingly alleged that it had a constitutionally protected property interest in the right to compete for city-mandated sewer and concrete repair work without "inequitable government interference" because of its status as a registered contractor under city ordinance. *Id.* ¶¶ 54, 61-62. The court construes this as a substantive due process claim, particularly because MSA made no allegations of Wickliffe's lack of or failure to follow procedural safeguards. *See Nunn v. Lynch*, 113 F. App'x 55, 61 (6th Cir. 2004) ("A plaintiff 'may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations.'" (quoting *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 585, 588 (6th Cir. 2004)). The court intentionally uses the word seemingly, because it is unclear what precise due process claim(s) MSA was attempting to assert – a lack of clarity that manifested itself in the parties' attempts to grapple with the applicable caselaw and their varied arguments. Given the ambiguity in the pleadings, the court will address both types of due process claims.

**1.  Procedural Due Process**

Wickliffe's motion to dismiss proceeds as though Count One is solely a procedural due process claim. ECF Doc. 11 at 11-18. It first argues that MSA failed to allege a constitutionally

6

protected property interest in the "right to compete fairly and without inequitable government intervention" because: (i) MSA was required to show a legitimate claim of entitlement to the property interest and not a unilateral expectation or abstract need/desire for it; (ii) no caselaw could be located which established a "constitutionally protected business interest in the right to compete fairly and without inequitable government intervention"; and (iii) the closest analogous case, *Med Corp. v. City of Lima*,[8] weighs against MSA. *Id.* at 12-16. Wickliffe then argues that, even if MSA had alleged a protected property right under the Due Process Clause, MSA's procedural due process claim fails because MSA did not allege and establish the inadequacy of state remedies pre- and post-deprivation. *Id.* at 16-18.

MSA's response to the motion to dismiss does not appear to treat Count One as a procedural due process claim because it: (i) uses the phrase "procedural due process" only once in citing caselaw indicating that licenses and permits qualify as property interests for purposes of procedural due process, ECF Doc. 16 at 10; (ii) discusses and provides extensive caselaw concerning substantive due process, *id.* at 10-11; and (iii) explicitly states that Wickliffe's actions "satisfy the requirements for a substantive due process claim[,]" *id.* at 11. MSA appears to respond to Wickliffe's argument about failing to plead the inadequacy of state remedies by arguing that a plaintiff is not required to exhaust available state remedies before seeking relief under § 1983. *Id.* at 16-17. It further argues that there are no state remedies available under any local ordinance or in the Ohio Revised Code. *Id.* at 16.

Wickliffe's reply brief notes that MSA offered little response to its procedural due process arguments other than a "strawman" argument about the exhaustion of state remedies. ECF Doc. 17 at 7-8. Wickliffe states that it made no arguments concerning exhaustion and MSA

---

[8] 296 F.3d 404 (2002).

has confused two separate issues: "the necessity of pleading and proving the inadequacy of state remedies with exhaustion of administrative remedies." *Id.* at 8. Wickliffe reiterates that MSA was required to plead the inadequacy of state remedies to sustain a procedural due process claim but it failed to do so, dooming its procedural due process claim. *Id.*

Although MSA appears to present Count One as a substantive due process claim and could be deemed to have abandoned a procedural due process claim, the court elects to address the merits of a procedural due process claim under Count One.

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Clause contains both a procedural and a substantive component. *Doe v. DeWine*, 910 F.3d 842, 851 (6th Cir. 2018). To state a valid procedural due process claim, plaintiffs must not only allege they were deprived of a protected liberty or property interest, but they must allege that this deprivation occurred without due process of law. *Printup v. Dir., Ohio Dep't of Job & Family Servs.*, 654 F. App'x 781, 786-87 (6th Cir. 2016); *Nunn*, 113 F. App'x at 61. In the Sixth Circuit, "a § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' *and* that available state remedies would not adequately compensate for the loss." *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991) (citation omitted) (emphasis added).

In *Parratt v. Taylor*, the Supreme Court held that the negligent deprivation of state property by state officials does not violate a party's procedural due process rights unless the state fails to afford an adequate post-deprivation remedy. 451 U.S. 527, 537 (1981), *overruled in part*

8

*on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). This rule also applies to unauthorized and intentional deprivations of property. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Accordingly, the Sixth Circuit has held that when a plaintiff challenges a deprivation arising from a random, unauthorized act of a state government official, a plaintiff is required to plead and prove the inadequacy of state remedies in order to state a procedural due process claim. *See Mitchell v. Fankhauser*, 375 F.3d 477, 483-84 (6th Cir. 2004) (clarifying Sixth Circuit precedent interpreting the *Parratt* doctrine); *Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).

Here, the complaint does not allege that MSA's due process rights were violated because of an established Wickliffe policy or procedure. *See generally* ECF Doc. 1. Instead, the pleadings allege that Sack and other city employees responded to parties who called Wickliffe for information about city inspections by referring those parties to specific contractors instead of referring them to the list of contractors. *Id.* ¶¶ 22, 24, 36, 59. Thus, the *Parratt* doctrine applies and MSA was required to plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479-80; *Mitchell*, 375 F.3d at 483-84.

MSA has neither pleaded nor shown that Ohio's judicial remedies are inadequate or that it would be futile to pursue his claims in Ohio courts. *See Lillie v. Egelhoff*, No. 00-3691, 2000 U.S. App. LEXIS 31941, at *4 (6th Cir. Dec. 5, 2000) (citing *Gibbs v. Hopkins*, 10 F.3d 373, 377-78 (6th Cir. 1993)). Although MSA is correct that it did not need to exhaust any state remedies before initiating this action, it was still required to *plead* the inadequacy of state remedies in order to state a procedural due process claim. Accordingly, to the extent that MSA attempted to assert a procedural due process claim, the claim fails.

9

### 2. Substantive Due Process

As discussed above, MSA's opposition brief appears to characterize Count One as a substantive due process claim. MSA asserts that its due process rights were violated when Wickliffe employees failed to inform prospective sellers about the existence of a list of approved contractors but instead endorsed and referred sellers to specific individual contractors – "Formica for Sewer, Vanjo for concrete." ECF Doc. 16 at 10-11. MSA argues that these actions satisfy the requirements of a substantive due process claim because: (i) the actions were non-legislative in nature; and (ii) the Wickliffe employees engaged in "extreme" anticompetitive behavior that "is so far afield from normal practice that it can be described as nothing less than shocking." *Id.* at 11. MSA also argues that the right to fairly compete for business without illegal government intervention is a constitutionally protected property interest because: (i) Ohio caselaw provides for an unfair competition claim; (ii) Ohio recognizes a tort for interference with business relationships; (iii) Ohio's Valentine Act, Ohio Rev. Code § 1331.01, *et seq.*, establishes a right to "operate a business free from undue interference, unfair competition and illegal trust type behavior." *Id.* at 11-15.

Wickliffe argues that MSA's substantive due process claim fails because: (i) it does not offer any argument that its claim involves a substantive fundamental right, nor does it allege a right that qualifies for such protection; and (ii) the alleged claim does not satisfy the narrow "shock the conscious" standard.[9] ECF Doc. 17 at 2-6.

---

[9] The court will consider Wickliffe's arguments on substantive due process because: (i) as noted above, the complaint is ambiguous as to what kind of due process claim MSA is asserting; and (ii) Wickliffe did not raise a new issue on reply; rather, it responded to the arguments presented in MSA's opposition brief and the seeming clarification that the claim was for substantive due process. It is well established that courts will not normally consider issues that were raised for the first time in a reply brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir.2008); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001). "Court decisions have made it clear that [parties] cannot raise new issues in a reply brief; [they] can only respond to arguments raised for the first time in [the opposing party]'s brief." *Crozier*,

Substantive due process prevents the overreach of governmental power by barring certain government actions "regardless of the fairness of the procedures used to implement them." *Guertin v. Michigan*, 912 F.3d 907, 917-18 (6th Cir. 2019) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Substantive due process specifically protects a narrow of class of interests, "including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003)); *see Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (providing that substantive due process "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."). For purposes of substantive due process, "fundamental rights" do not include garden-variety property or liberty interests, which are protected and covered by procedural due process protections. *LRL Properties v. Portage Metro. Housing Auth.*, 55 F.3d 1097, 1115-16 (6th Cir. 1995); *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (citing *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990)). It also protects individuals from arbitrary deprivation of their property and liberty interests by government action, "which is another formulation of the right to be free from conscience-shocking actions." *See id.*; *County of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998).

To establish a substantive due process violation, plaintiff must demonstrate that the defendants abused their official power in a manner that "shocks the conscience" of the court,

---

259 F.3d at 517 (quoting *United States v. Jerkins*, 871 F.2d 598, 601 n.3 (6th Cir. 1989). However, a defendant does not err by replying to an argument raised by a plaintiff in a prior brief, as "reply briefs *reply* to arguments made in the response brief." *Flowers*, 513 F.3d at 553 (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (emphasis in original).

regardless of whether state-law remedies were available or provided sufficient protection. *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993) (providing that such a "claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them. The test for substantive due process claims of this type is whether the conduct complained of 'shocks the conscience' of the court."); *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir. 1995). Thus, to be sufficient, a complaint must allege facts that, if true, would establish such an abuse of official power that the conscience of the court would be shocked.

The Sixth Circuit has established that the "shocks the conscience" standard is difficult to satisfy. *See Kouider on behalf of Y.C. v. Parma City Sch. Dist. Bd. of Educ.*, 480 F. Supp.3d 772, 783 (N.D. Ohio 2020); *see also Blythe v. Schlievert*, 245 F. Supp.3d 952, 957 (N.D. Ohio 2017). To pass this test, a plaintiff must allege conduct that "violates the decencies of civilized conduct" or "includes actions so brutal and offensive that they do not comport with traditional ideas of fair play and decency." *Range v. Douglas*, 763 F.3d 573, 589-90 (6th Cir. 2014) (quoting *Lewis*, 523 U.S. at 846-47) (internal quotation marks omitted and alteration adopted); *see also Dohner v. Neff*, 240 F. Supp. 2d 692, 703 (N.D. Ohio 2002) ("To pass this test, the conduct must be so egregious as to violate society's ideas of decency and fair play."). "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Lewis*, 523 U.S. at 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). Ultimately, to determine whether a defendant's conduct meets the "shocks the conscience" standard, a court must evaluate the circumstances of the individual case. *Range*, 763 F.3d at 591; *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002).

12

Here, MSA did not contend that a "fundamental right" was abridged, and it has failed to allege facts which satisfy the "shock the conscience" standard. According to the complaint, MSA's property interest in the right to fairly compete for business was violated when Wickliffe representatives and employees (including Sack) referred parties who sought to have city-mandated sewer and concrete work done to two contractors (Formica Plumbing and Vanjo Construction), instead of referring the parties to a list of registered contractors (which included MSA). ECF Doc. 1 ¶¶ 22, 24, 29-30, 33, 36, 54, 58-62. Even if the court were to accept these allegations as true, these actions do not rise to the level of conduct that is so egregious that it "violates the decencies of civilized conduct" or "society's ideas of decency and fair play." *See Lewis*, 523 U.S. at 846; *Range*, 763 F.3d at 589-90. Neither is there any caselaw establishing that such conduct would meet the "shock the conscience" standard – a fact that MSA essentially concedes. *See* ECF Doc. 16 at 11. The behavior described in the complaint, though understandably upsetting to MSA, does not clear the high bar necessary to be considered "egregious" or "outrageous" conduct that violated the substantive due process rights of MSA. *See Lewis*, 523 U.S. at 847 n.3. Thus, MSA cannot sustain a substantive due process claim against Wickliffe.

Accordingly, Wickliffe's motion to dismiss MSA's due process claim (Count One) will be GRANTED.[10]

---

[10] The court also notes that, under *Monell*, MSA failed to establish municipal liability for Wickliffe for either a procedural or substantive due process violation. Wickliffe raised the issue of municipal liability and *Monell* in regard to Count One but inexplicably failed to raise the issue on Count Three. In order for plaintiffs to succeed on a § 1983 claim against a municipality, they must demonstrate that the municipality was responsible for the constitutional violation by virtue of a municipal policy, practice or custom. *Monell*, 436 U.S. at 690, 694. "A municipality can be shown to have a 'custom' causing constitutional violations, even if that custom was not formally sanctioned, provided that the plaintiff offers proof of policymaking officials' knowledge and acquiescence to the established practice." *Spears v. City of Cleveland*, 589 F.3d 249, 256 (6th Cir. 2009) (citing *Monell*, 436 U.S. at 690-91). Here, MSA's complaint does not allege that Sack, or other unnamed Wickliffe employees, took actions pursuant to a

### C. Count Three – Unreasonable Restraint of Trade in Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1

Wickliffe argues that Count Three fails because MSA sought only damages for this antitrust claim and the Local Government Antitrust Act of 1984 ("LGAA"), 15 U.S.C. § 34, *et seq.*, restricts municipal antitrust liability to only declaratory and injunctive relief, while barring recovery for damages. ECF Doc. 11 at 19-20. Wickliffe adds that antitrust liability is also limited to declaratory and injunctive relief against Sack as well because he is a local government employee acting in an official capacity. *See id.*

MSA responds by arguing that the LGAA does not restrict liability for Sack because the statute only provides immunity for private parties that are acting the behest of the government and does not protect government employees who engage in anti-competitive behavior. ECF Doc. 16 at 17-18. Notably, MSA does not address whether LGAA limits liability as to Wickliffe. *See id.*

When a party fails to respond to an argument in a motion to dismiss, the Court assumes that the party has conceded that point and abandoned the claim. *ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 750 (M.D. Tenn. 2021); *see also Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007) (affirming the district court's conclusion that the plaintiff abandoned certain claims by failing to address them in his brief opposing the government's motion to dismiss); *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (stating that when a plaintiff fails to respond to an argument in a motion to dismiss, "the Court assumes

---

municipal policy, practice, or custom. Instead, the complaint seemingly alleges that the employees took these actions of their own accord. MSA even alleges that Wickliffe disapproved of the employees' actions, asserting that Wickliffe issued a letter in 2018 "advising City employees against the practice of referring residents to specific contractors and/or endorsing specific contractors," and suspending Sack in 2019 for making such referrals. ECF Doc. 1 ¶¶ 47-48. As such, MSA's Count One claim against Wickliffe would fail on these grounds.

14

he concedes this point and abandons the claim"). Because MSA failed to address whether the LGAA bars liability for damages as to Wickliffe, MSA is deemed to have abandoned and/or waived its Count Three claim against Wickliffe. *See ARJN #3*, 517 F. Supp. 3d at 750; *see, e.g.*, *USA Parking Sys., LLC v. Eastern Gateway Cmty. Coll.*, 2022 U.S. Dist. LEXIS 18320, *13 (N.D. Ohio 2022) (determining that the plaintiffs abandoned several claims when they failed to respond to the defendant's arguments that said claims were barred by sovereign immunity – effectively conceding the defendant's arguments).

The court finds in the alternative that Wickliffe's argument concerning Count Three is well taken, and MSA's Count Three claim against Wickliffe fails on the merits. "The LGAA, enacted in response to the voluminous antitrust litigation against local governments, provides that '[n]o damages, interest on damages, costs, or attorney's fees may be recovered [for antitrust violations] . . . from any local government, or official or employee thereof acting in an official capacity.'" *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 848 (6th Cir. 2012) (alteration in original) (quoting 15 U.S.C. § 35(a)); *see also Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1277 (9th Cir. 2022) ("The LGAA precludes the recovery of antitrust damages 'from any local government, or official or employee thereof acting in an official capacity.'" (quoting 15 U.S.C. § 35(a)). Under the LGAA, the definition of "local government" includes any "city, county, parish, town, township, village, or any other general function governmental unit established by State law." 15 U.S.C. § 34. Here, MSA sought only damages on its Count Three claim. *See* ECF Doc. 1 at 12, 16. Because Wickliffe is a city under Ohio law and therefore qualifies as a "local government" under the LGAA, MSA is precluded from seeking damages and attorney's fees against Wickliffe under the Sherman Act.

15

Accordingly, Wickliffe's motion to dismiss MSA's Count Three Sherman Act claim against Wickliffe will be GRANTED.

Because Count Three is due for dismissal on the above grounds, it is unnecessary for the court to consider the parties' arguments concerning whether the defendants' alleged conduct had a sufficient connection and effect on interstate commerce.[11]  *See* ECF Doc. 11 at 20-23; ECF Doc. 16 at 18-27.

## V. Conclusion

Wickliffe's motion for partial judgment on the pleadings (ECF Doc. 11) is GRANTED. Counts One, Three, and Four are DISMISSED as to Wickliffe.  All claims against Defendant Sack are unaffected by this ruling.

**IT IS SO ORDERED.**

Dated: October 20, 2023

Thomas M. Parker
United States Magistrate Judge

---

[11] That said, the court expresses uncertainty that the alleged conduct in this case reached the jurisdictional threshold to sustain a federal antitrust claim, given that city employees referring persons who call for information about city inspections to specific contractors does not appear to have any appreciable effect on interstate commerce.  *See Stone v. William Beaumont Hosp.*, 782 F.2d 609, 613 (6th Cir. 1986) (providing that when the defendants' activity is local in nature, a plaintiff must demonstrate that the activity "has an effect on some other appreciable activity demonstrably in interstate commerce") (citing *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 242 (1980)); *see Devoto v. Pacific Fidelity Life Insurance Co.*, 516 F.2d 1, 4 (9th Cir. 1975) ("[T]he test of jurisdiction is not that the acts complained of affect a business engaged in interstate commerce, but that the conduct complained of affects the interstate commerce of such business.").